James Edward WAGNER, Petitioner-Appellant,

v.

Jerry T. WILLIFORD, Warden, Respondent-Appellee.

No. 86–1049.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1986.

Decided Nov. 4, 1986.

Rehearing and Rehearing En Banc Denied Jan. 30, 1987.

 

Howard B. Eisenberg, Legal Clinic, S. Ill. University, Carbondale, Ill., for petitioner-appellant.

Laura J. Jones, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for respondent-appellee.

Before CUMMINGS, WOOD and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

In recent years this court has heard a series of cases, arising from the maximum security federal penitentiary at Marion, Illinois, that have required us to consider the scope of due process protections when prison disciplinary proceedings involve confidential informants. *See, e.g., McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1982) (*"McCollum I"*); *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.), *cert. denied sub nom. Yeager v. Wilkinson,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *McCollum v. Williford,* 793 F.2d 903 (7th Cir.1986) (*"McCollum II"*); *Sanchez v. Miller,* 792 F.2d 694 (7th Cir.1986). These cases clarify and amplify the minimum due process requirements outlined by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Petitioner in this case is an inmate at Marion who lost his good time credits when the prison disciplinary committee, relying on confidential informants, found him guilty of killing another inmate. He challenges (1) a finding of informant reliability that did not reach the record until after the adjudication, and (2) the district court's failure to grant his counsel access to the confidential information relied on by the prison authorities, even though his attorney was specifically found to be trustworthy. For reasons explained below, we affirm in part and

remand in part for proceedings consistent with this opinion.

## I.

On January 12, 1981, Thomas Sargis, an inmate of the United States Penitentiary in Lompoc, California, was found stabbed to death in his cell. Three days later petitioner James E. Wagner, also an inmate at the Lompoc penitentiary, received an incident report, *see* 28 C.F.R. § 541.13, Table 3 (Code 100—Killing), charging him with the killing. The prison Institutional Discipline Committee (IDC) held a hearing on February 4 or 5, 1981,[1] at which Wagner was represented by a staff representative. Wagner presented five fellow inmates as witnesses on his behalf and submitted a statement.

The IDC found Wagner guilty of the killing. According to its hearing report, this conclusion rested on three sources: the incident report, the ensuing investigation, and confidential evidence received from three informants that was summarized in a written report from the Federal Bureau of Investigation.[2] As a result of this finding of guilt, the IDC revoked Wagner's 176 accumulated "good time" days, placed him in disciplinary segregation for 60 days, and recommended him for placement in the Marion Control Unit. Wagner appealed this finding of guilt through administrative channels.

On May 21, 1981, the IDC chairperson amended the IDC hearing report as follows:

... the names of the informants referred to in Section 5 of Institution Discipline Committee hearing held on James Wagner, ... for killing another individual

was [sic] known to the committee during the I.D.C. hearing. The Institution Disciplinary Committee determined that the statements given by the three confidential sources was [sic] reliable and valid based on their statements which was [sic] collaborated [sic] by substantial physical evident [sic].

IDC Hearing Amendment of May 21, 1981 (reprinted in Respondent's brief at A12).

Wagner was subsequently transferred from Lompoc to the United States Penitentiary at Marion, Illinois, where he was placed in that institution's control unit. On February 3, 1983, having exhausted his administrative remedies, Wagner filed a habeas corpus petition. The petition charged that the evidence relied on by the IDC was insufficient to sustain its action; that the use of confidential information was a violation of due process; and that the IDC was improperly allowed to amend its determination.

The magistrate examined the FBI report *in camera,* and petitioner's court-assigned counsel moved for a protective order that would allow him to review the report without revealing the information to petitioner. The court denied the motion, stating that the *in camera* materials merely detailed the information already provided to petitioner's counsel in the IDC report. The magistrate also noted that although he was confident that petitioner's counsel would have in fact kept the information in the strictest confidence, he "could not reach the same conclusion with regard to all attorneys who might appear before [him]." *Wagner v. Williford,* No. CV 83–4032 (S.D. Ill. Jan. 4, 1985) (order concerning motion to review *in camera* materials). On De-

---

**1.** Discrepancies in the record make the exact date of the hearing unclear. It appears from the IDC hearing report that the hearing convened at 10:30 A.M. on February 4 and was reconvened the next day at 9:00 A.M.

**2.** The IDC reported the specific evidence it relied on for the finding of guilt as follows:

Information given to the FBI by 3 confidential sources who are unrelated. One confidential source states he heard SARGIS call out "Punchy" which is the nickname of WAGNER

and overheard a struggle and observed SARGIS laying in a pool of blood. 2nd informant states he heard SARGIS tell Punchy "I don't have any dope." Informant observed WAGNER stab SARGIS in the chest cavity. 3rd confidential informant observed WAGNER make a stabbing motion towards SARGIS' chest in SARGIS' cubicle.

IDC Hearing Report on inmate James E. Wagner, January 28, 1981, at 2.

cember 4, 1985, the court granted the government's motion for summary judgment.

On appeal Wagner raises two issues. First, Wagner argues that he was denied due process of law when the IDC based its conclusion on evidence from confidential informants, because no determination of the informants' reliability reached the record until after the adjudication. Second, Wagner argues that he was denied due process of law and the effective representation of counsel when the district court denied his attorney access to the confidential report.

## II.

### A.

A threshold issue in this case is the applicable law. In its brief, respondent stated that "the 1981 IDC hearing should not be subjected to the same scrutiny that a hearing is now subjected to." Respondent noted that the cases on which petitioner relied in his brief (most notably *McCollum I,* 695 F.2d 1044 (7th Cir.1982), in which we explicitly required that some showing of reliability be made when disciplinary proceedings involve confidential informants) were decided after Wagner's hearing. However, respondent did not elaborate on this argument, nor did petitioner respond to it in his reply brief.

■ Seven days after we heard oral argument in this case, this court decided *Sanchez v. Miller,* 792 F.2d 694 (7th Cir. 1986). In *Sanchez* we held, relying on *Wolff v. McDonnell, supra,* that the constitutionality of an IDC hearing must be considered under the law in existence at the date of the hearing. 792 F.2d at 702. We suggested in a footnote that "one must also look to the law of the place where the hearing was conducted." 792 F.2d at 703, n. 14. Therefore, under the rule of *Sanchez* the controlling law in this case is that of the Ninth Circuit as of February 5, 1981. However, we now modify the non-retroac-

tivity rule announced in *Sanchez* and hold that *McCollum I* and its progeny continue to apply to cases filed or pending in the courts of this circuit on June 9, 1986, the date of decision in *Sanchez.* Cases filed after that date are subject to the rule announced in *Sanchez.*

Before the *Sanchez* decision this court had, without discussing the issue, consistently applied *McCollum I* (which was decided on December 20, 1982) retroactively. *Sanchez,* 792 F.2d at 702. *See, e.g., Mendoza v. Miller,* 779 F.2d at 1290 (IDC hearing held on April 3, 1981; *Dawson v. Smith,* 719 F.2d at 897 (IDC hearing held on October 25, 1977; and *Jackson v. Carlson,* 707 F.2d at 946 (federal appeals not filed until 1981 and 1982). *Sanchez* thus effectively reversed past precedent. Moreover, it is clear that here both parties relied on the prior line of cases. Respondent's non-retroactivity argument was no more than an assertion, and neither party addressed the issue of the state of the law in 1981 in its brief. It would be inequitable not to respect this reliance. *Cf. Solem v. Stumes,* 465 U.S. 638, 646 n. 6, 104 S.Ct. 1338, 1343 n. 6, 79 L.Ed.2d 579 (1984) ("[A]uthorities are generally entitled to rely on existing caselaw, whatever its disrepute.").

The application of *Sanchez* to cases already pending in the courts at the time of that decision is troublesome in terms of judicial efficiency as well as fairness to litigants. In situations such as the case at bar this court would be faced with two choices: either order the parties to submit supplemental briefs—creating further delay—or decide the case "in a vacuum," without the benefit of briefs or argument by the parties. *Cf. Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986) (in civil case, procedural rule made retroactive where issue adequately briefed on appeal and court did not have to decide case in vacuum).

Finally, this exception will not undermine the purpose of the non-retroactivity rule

announced in *Sanchez*, which was to avoid burdening the courts with a flood of cases. *See Sanchez*, 792 F.2d at 703 (quoting *Wolff*, 418 U.S. at 574, 94 S.Ct. at 2983).

We therefore create a limited exception to the non-retroactivity rule announced in *Sanchez* for cases pending in the courts of this circuit as of June 9, 1986. *Compare Phelps v. Duckworth*, 757 F.2d 811 (7th Cir.1985) (rule in *Doyle v. Ohio* held applicable to cases on direct appeal when rule established).

### B.

We next address the issue of the after-the-fact finding of reliability.

In *Mendoza v. Miller, supra,* this court listed four possible indications that confidential information introduced in an IDC hearing is reliable:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, "he had first hand knowledge of the sources of the information and considered them reliable on the basis of 'their past record of reliability,' "; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Mendoza*, 779 F.2d at 1293 (citations omitted).

■ Wagner challenges the reliability determination in this case as insufficient because the amendment to the IDC report was made after the fact. In response to respondent's argument that this amendment of the record was merely a clarification, Wagner points out that two factual determinations were new: the finding of past reliability and the finding of "substantial physical evidence" corroborating the informants' evidence.

Measured against the third *Mendoza* indication of reliability, the amendment appears to fall short. First, the chairperson of the IDC does not state that he personally had first-hand knowledge of the informants, only that their names were known to the committee as a group. Second, the reliability finding does not appear to have been made based on the past track record of the informants in question, but rather on "physical evidence" that was referred to for the first time—and apparently the only time—in the amendment itself. Finally, the *post hoc* nature of the amendment raises questions of fairness.

However, we need not decide this issue, because only one of the four *Mendoza* indicia need be shown, and here the fourth is clearly demonstrated. The magistrate reviewed, *in camera,* the confidential material on which the IDC relied and concluded that it contained "more than sufficient additional information to bolster the reliability of the information." *Wagner v. Williford*, No. CV 83–4032 (S.D.Ill. Dec. 4, 1985) at 5 (quoting *Dawson v. Smith*, 719 F.2d at 899). There is no reason to disturb this finding on appeal.[3]

We therefore find no due process violation in the IDC's use of confidential information.

### C.

Petitioner's second argument is that he was denied due process of law and effec-

---

**3.** Petitioner relies on *Hayes v. Thompson*, 637 F.2d 483 (7th Cir.1980), for the proposition that it is improper to allow prison authorities to augment the record of disciplinary proceedings after a challenge to those proceedings has been brought by the inmate. This reliance is misplaced. In *Hayes*, the Institutional Adjustment Committee denied an inmate his request for witnesses at a disciplinary hearing. At trial the committee members testified as to their basis for reaching their decision, and the district court found that the denial was a proper exercise of discretion. We reversed, finding that "support *in the administrative record* is necessary to protect the prisoner from arbitrary official action, and is a minimum requirement of due process." *Hayes*, 637 F.2d at 488 (emphasis in original). Here the support for the IDC's decision is not testimony brought out only at trial but is a part of the administrative record.

tive representation of counsel by the magistrate's refusal to allow his attorney access to the FBI report under a protective order.

There are two risks associated with allowing defense counsel access to this kind of confidential information: that of intentional disclosure and that of inadvertent disclosure. If an unscrupulous attorney provides her client with identifying information about a confidential informant, not only may the supply of informants eventually disappear, but lives may be lost. *McCollum I*, 695 F.2d at 1049. Yet a lawyer of the utmost integrity may also inadvertently reveal information that might mean nothing to her, but everything to the inmate with an intimate knowledge of Marion. In light of the intractability of these problems and our lack of expertise in such matters, in *McCollum I* and later in *Mendoza* we declined to "adopt a general rule allowing inmates' counsel access to investigative reports containing confidential information." *Mendoza*, 779 F.2d at 1298.[4] In *McCollum I* we also expressed our reluctance to have courts or prison officials decide which lawyers are trustworthy. *McCollum I*, 695 F.2d at 1049.

■ We have previously noted the extreme difficulty of balancing the interests of prisoners and of prison authorities with the requirements of the Constitution. *See id.* Although the court below clearly was sensitive to both the risks and the high stakes involved, we nevertheless see two problems in its order which necessitate a limited remand. First, when balancing the costs and benefits of granting Wagner's attorney access to the FBI report, the court, despite its own finding of confidence in petitioner's attorney, entered into the equation the fact that in other situations the attorney might be less trustworthy, or unknown to the court. We think this places an unwarranted burden upon the ethical attorney. An attorney specifically found to be trustworthy should not have to bear the weight of her fellows who may not be.

Second, the court's order denying petitioner's counsel access to the confidential report does not reflect any steps less drastic than completely withholding the report that might have been available. The objective must always be to provide defense counsel with as much information as possible. In this case, even given that the *in camera* materials were merely a detailed account of the information already provided in the IDC report, there may have been some quantum of information that would have assisted petitioner's attorney, yet would not if revealed necessarily have led to identification of the informants.[5]

■ In future cases the court should follow a two-step analysis. First, the court should consider the risk of intentional disclosure. The presumption should be, of course, that this risk is negligible. While attorneys are advocates, they are also officers of the court. Their duty to their clients cannot override their duty to respect the system of justice, including court rules

---

4. In *McCollum I* we remanded the case to the district court for a determination of feasible safeguards that could be implemented to insure minimal due process at Marion when disciplinary proceedings involved confidential informants. The district court considered the problem of attorneys' inadvertent disclosure of confidential information. After hearing testimony from Marion officials, the court concluded that it had "no reason to believe that such counsel or staff member would have the sensitivity necessary to omit reference to any information which may inadvertently reveal the identity of the informants." *Mendoza* at 1298.

5. It may be that the best procedure will be for prison officials to submit two versions of confidential material for *in camera* review. As before, the court would be able to examine the original, complete material. The second version, to which defense counsel would have access, would be redacted of identifying information (subject to the approval of the court). Alternatively, the chairperson of the IDC might be asked to personally attest to the court that the confidential information must be kept from the inmate's counsel in order to avoid reprisals, and that lesser means such as redaction would be insufficient. Consultations between the court, prison officials and perhaps members of the prisoners' bar may of course produce other, better alternatives.

**1018**

and orders. *See In re Ronco, Inc.*, 105 F.R.D. 493, 497 (N.D.Ill.1985); *see also Matter of Pritzker*, 762 F.2d 532, 533 (7th Cir.1985) (per curiam) ("[I]t is the responsibility of an attorney to manage his or her practice in a manner that permits compliance with the court's rules and orders."); *United States v. Lowery*, 733 F.2d 441, 446 (7th Cir.1984) ("The obligation of counsel is to defend his client within the rules of the game; he has neither duty nor right to break the rules."); ABA Model Code of Professional Responsibility, Disciplinary Rule 7–102(A)(7) ("In his representation of a client, a lawyer shall not ... counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.").

Nevertheless, if the court has reason to believe that the attorney will not respect the terms of a protective order, it has the discretion both to withhold the confidential information entirely and to take any other appropriate action. *See Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 716 (7th Cir.1977) ("[T]he court, once apprised of an alleged breach of professional responsibility has a duty to determine whether there is any substance to the accusations."); *cf. Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982) (many avenues available to a court attempting to ensure that Canons 4 and 9 of the ABA Code of Professional Responsibility, concerning conflicts of interest and the appearance of impropriety, are not violated).

Second, in the absence of specific evidence of untrustworthiness, the court should consider the risk of inadvertent disclosure. Here the court should make full use of procedures such as redaction in order to fashion an appropriate compromise between the inmate's right to effective assistance of counsel and the necessity of protecting informant anonymity.

In this case, because counsel was specifically found to be trustworthy, the first step of the analysis has been completed. The sole issue on remand is therefore whether options existed, short of withholding the report entirely, to allow Wagner's attorney

access to the confidential information without endangering the sources of that information.

The decision is affirmed in part and remanded in part for proceedings consistent with this opinion.