**William McKINNEY,
Petitioner-Appellant,**

v.

**Edwin MEESE, Attorney General, et al., Respondents-Appellees.**

**No. 86–2492.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1987.

Decided Sept. 22, 1987.

Rehearing and Rehearing En Banc Denied Oct. 26, 1987.

---

Nancy Horgan, Carbondale, Ill., for petitioner-appellant.

Laura J. Jones, Asst. U.S. Atty., Benton, Ill., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for respondents-appellees.

Before WOOD and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

William A. McKinney, an inmate at the federal penitentiary in Marion, Illinois, was disciplined by prison authorities for killing another inmate. The prison authorities relied on confidential information that they did not disclose to McKinney. He filed suit in federal district court for a writ of habeas corpus, alleging violations of due process. The district court, after examining the confidential material *in camera*, denied the petition. On appeal, McKinney makes several arguments: that he was entitled to access to the confidential informant material; that the information was obtained in exchange for the promise of a favor, in violation of prison rules; that he was disciplined for impermissible retaliatory reasons; and that the district court applied the incorrect standard of review. We will affirm.

I

Gregory Keefer was stabbed to death in his cell in the maximum security federal penitentiary at Marion, Illinois, on September 23, 1983. Inmates are forbidden to kill one another. 28 C.F.R. § 541.13 (Code 100 —Killing).

Petitioner-appellant, William McKinney, received an incident report from prison authorities on January 19, 1984.

Information received through investigation and confidential sources reveal [sic] that on September 23, 1983, you did enter cell # 18, on D-range of D-unit which was assigned to inmate Gregory Keefer, # 14790–116, and in the presence of inmates Stanley Pearson # 01625–097 and Robert Martin # 39717–066, did inflict fatal stab wounds to inmate Keefer's person. Processing of incident report delayed due to continuing investigation and referral to the FBI for prosecution.

The report listed the reporting prison employee as Lieutenant Guy Barker.

The Institutional Discipline Committee ("IDC") held a hearing on the matter on January 25, 1984. McKinney waived his rights to representation by a member of the staff and to present witnesses in his defense. He testified, denying the allegations and declining further comment.

The committee found that McKinney had committed the act as charged:

At approximately 5:20 PM, on 9/23/83, inmate Keefer was fatally assaulted in his cell, D–D–18. Unit records reflect you were housed in D–Unit on 9/23/83, and had physical access to inmate Keefer during the unit's movement to and from the institution's dining room. Following the killing, SIS Christie received confidential informant information which revealed you were directly involved in the murder of inmate Keefer. As reflected in the attached memorandum prepared by the IDC Chairman (not available to inmate McKinney) the IDC finds the confidential informant information to be reliable and the identity of the confidential informant is known to the IDC Chairman and the substance of the confidential information is known to the IDC members.

As sanctions, the IDC ordered that McKinney spend sixty days in disciplinary segregation and that he forfeit six hundred and thirty-two days "statutory good time" of the six hundred and thirty-three days he had to his credit. Under 18 U.S.C. § 1461, a prisoner is entitled to a reduction in his sentence if his conduct record is void of infractions. *See Jackson v. Carlson,* 707 F.2d 943, 947 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983).

The IDC also decided to recommend to the United States Parole Commission that McKinney's recommended parole date be rescinded. The parole commission subsequently relied on the IDC report in rescinding McKinney's presumptive parole date of September 12, 1984, and recommending that he serve the entire term of his sentence for bank robbery, which expires in 1994. The parole commission took into account other findings that McKinney had possessed a sharpened instrument, narcotic paraphernalia, and marijuana, and had engaged in a group demonstration. McKinney was also placed in Marion's Control Unit, an even higher security confinement within the nation's highest security prison.

The Chairman of the IDC amended[1] the IDC report on May 25, 1984, to add the following:

The purpose of this memo is to clarify section V of the IDC action in the above case. The confidential informant has provided information which has led to the discovery of four homemade knives in two separate locations within the institution, therefore, he is considered 100% reliable.

Additionally, if the details were discussed, it may [sic] lead to the identity of the confidential informant, and therefore, jeopardize his safety/security.

The clarification memorandum was placed in McKinney's "releasable section of [the] Central File," meaning that it was available for his inspection.

McKinney was subsequently indicted for the murder of Keefer. *United States v. William McKinney,* No. 83–30043 (S.D.

---

**1.** In *Wagner v. Williford,* 804 F.2d 1012, 1016 n. 3 (7th Cir.1986), we held that a similar post-decision amendment, stating for the record the IDC's finding that the confidential informants were reliable, was not improper and became part of the administrative record upon which the reviewing court could rely.

Ill.). McKinney's counsel in this case has been appointed "standby counsel" in the criminal case.

On September 17, 1985, McKinney filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking expungement of the IDC finding, restoration of his statutory good time and previous parole date, and release from the Control Unit into the general Marion population. The district court granted respondent's motion for summary judgment. McKinney raises a number of contentions on appeal, each of which we have carefully considered and rejected.

## II

This court has had several occasions to consider the requirements of due process in the use of confidential informants in prison disciplinary proceedings at Marion, taking guidance from *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See Wagner v. Williford*, 804 F.2d 1012 (7th Cir.1986); *Sanchez v. Miller*, 792 F.2d 694 (7th Cir.1986); *McCollum v. Williford*, 793 F.2d 903 (7th Cir.1986) ("*McCollum II*"); *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Dawson v. Smith*, 719 F.2d 896 (7th Cir. 1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Jackson v. Carlson*, 707 F.2d 943 (7th Cir.), *cert. denied*, 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982) ("*McCollum I*").

To put this case in perspective, we sketch some of the general principles set forth in the above cases. A prisoner may be subjected to disciplinary action without revealing to him the name of the confidential informant, provided that the record, including the confidential record, reflects sufficient indicia of the informant's reliability. *Mendoza*, 779 F.2d at 1293; *Dawson*, 719 F.2d at 899. That reliability may be established by any one of four methods:

(1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, "he had first hand knowledge of the sources of the information and considered them reliable on the basis of 'their past record of reliability,'" or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Wagner*, 804 F.2d at 1016, *quoting with citations omitted Mendoza*, 779 F.2d at 1293. Respondent in this case relied on the fourth method, submitting *in camera* material for perusal by the district court and by this court.

The factual basis for the finding of reliability need not necessarily be made available to the inmate. *Mendoza*, 779 F.2d at 1294. *McCollum II*, 793 F.2d at 907. Rather, the court may satisfy itself of the informant's reliability by examining the *in camera* material. *Id.* Even the specific reasons why the information is kept confidential may be kept from the inmate if necessary. *Dawson*, 719 F.2d at 899.

Counsel for the inmate may move the court for access to the *in camera* material under a protective order. *Wagner*, 804 F.2d at 1017. The court first must consider the risk that counsel will relay the information to the inmate. This risk is normally presumed to be small, given the ethical standards governing the bar. *Id.* The court must then decide whether any or part of the *in camera* material may be made available "without endangering the sources of that information." *Id.* at 1018. The court may deny all access to the material if it determines that a danger exists that the use that counsel is likely to make of the material may inadvertently reveal the original sources of the material. *Mendoza*, 779 F.2d at 1298. *Cf. Smith v. Rabalais*, 659 F.2d 539 (5th Cir.1981) (all facts needed by prisoner to determine if he could establish alibi were facts that could lead to identity of confidential informant, with possibly fatal consequences).

## III

■ In the district court, McKinney moved to strike the *in camera* material from the record, on the basis that there was no affidavit certifying the nature of the documents, who prepared them, and whether they were before the IDC. McKinney also moved the court to make certain findings on the record regarding the *in camera* material, including the nature of each document, whether it was before the IDC, and whether IDC members received personal information about the confidential informant, such as his sentence, personality, and mental condition. The magistrate denied both motions, stating:

> The Court has examined the documents submitted *in camera* and finds that to reveal their contents or further respond to petitioner's request would lead to the identity of confidential informants and that the release of this information would endanger lives. The Court also finds that even to identify the documents, beyond stating that they include affidavits and memoranda generated with the expectation of confidentiality in connection with the Incident Report in question, would provide information which could lead to the identity of confidential informants and endanger lives.

The district court reviewed the *in camera* material and agreed with the magistrate.

In addition to appealing the district court's ruling, McKinney has filed a motion in this court seeking disclosure of the *in camera* material. McKinney has received various documents through discovery in the criminal case in which he is charged with the murder of Keefer and argues that the rationale for preserving the confidentiality of the material in this case no longer obtains. In the alternative, McKinney requests this court to identify which of the documents he has received are part of the *in camera* material.

We have carefully conducted an independent review of the *in camera* material and fully concur with the conclusion of the district court. Our examination also assures us that the district court did not rely upon material not before the IDC. We note that the district court issued its order before the appearance of our opinion in *Wagner* that requires the court to consider whether disclosure of any or all of the confidential material to the prisoner's counsel under a protective order forbidding disclosure to the prisoner is appropriate. The district court's opinion indicates that it would have found such disclosure inappropriate and we are of the same opinion. McKinney's receipt of documents in the criminal case does not alter our conclusion. We deny the separate motion for access to the confidential materials. *See Dawson,* 719 F.2d at 899; *Mendoza,* 779 F.2d at 1295–96.

## IV

■ McKinney uses information gained from discovery in the criminal case to make two arguments that he apparently did not make before the district court. Respondent does not argue that McKinney waived these arguments. Both can be disposed of quickly.

Under Bureau of Prisons Program Statement 5270.5, which governs the use of confidential informants, "Neither the UDC nor the IDC may consider information obtained in exchange for the promise of a favor to support its finding." McKinney claims that the confidential informant was transferred from Marion after giving the information and that this violates Program Statement 5270.5.

There is nothing in the record to suggest that any promise was made to grant a transfer in exchange for information. Thus, even if a transfer from Marion could be considered a favor, there is no showing that the information was given in exchange for the promise of this favor. Even if there was such an arrangement, we might be loathe to interpret 5270.5 to prevent prison officials from promising to protect confidential informants by transferring them away from those that they give information against.

McKinney also argues that there was no need to keep the *in camera* material confidential because the informant had been

transferred to another prison, where he was safe from McKinney. Another prison is not necessarily a sanctuary for a known informant. In any case, there could be concern that communication to the other prison could endanger the informant. In this case, those concerns are very real. McKinney is alleged to be a member of the Aryan Brotherhood, which does not confine itself to Marion. Its members have been held responsible for the murders of both inmates and guards. *See United States v. Fountain, Silverstein, and Gometz,* 768 F.2d 790 (7th Cir.1985) (One member of Aryan Brotherhood kills a guard because "The man disrespected me and I had to get him for it." Another member stabs three guards, killing one, and returns to his cell laughing.). The Brotherhood is allied with other gangs and has killed on its allies' behalf to avenge an insult. *See United States v. Silverstein,* 732 F.2d 1338 (7th Cir.1984). If the informant in this case was transferred from Marion, that did not lessen the need for confidentiality.

### V

McKinney contends that he was disciplined in retaliation for the acts of another inmate and that this violates the applicable administrative regulations and due process. Under 28 C.F.R. § 541.10(b)(4), "Disciplinary action may not be capricious or retaliatory."

On October 22, 1983, in separate incidents, two Marion guards were stabbed to death by inmates. *See United States v. Fountain, Silverstein, and Gometz,* 768 F.2d 790 (7th Cir.1985). In one incident, inmate Thomas Silverstein attacked a guard who was escorting him from the shower to his cell, stabbing him twenty-nine times and killing him. Silverstein is alleged to be a member of the Aryan Brotherhood. McKinney allegedly also belongs to that fraternity. According to an affidavit by McKinney, Lieutenant Barker visited McKinney's cell on October 24, 1983, and told him, "You're going to pay for what your brother did. I'll see to it that you're not going to go home; you'll lose your parole date."

At the time he allegedly made these remarks, Barker was the lieutenant for a cell block other than McKinney's. Barker became the Special Investigative Supervisor in January of 1984. Shortly thereafter, he charged McKinney with the killing of Keefer.

We rejected the argument that McKinney makes here in *Hanrahan v. Lane,* 747 F.2d 1137 (7th Cir.1984). Hanrahan claimed that prison guards manufactured evidence and issued him a disciplinary report in retaliation for his refusal to accede to their extortion demands. We recognized that prisoners have a right to be free from such arbitrary actions of prison officials, citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). But we held that the protections against such action are the procedural requirements of disciplinary actions. In *Hanrahan,* as in this case, the prisoner received notice of the allegations, an opportunity to be heard and to present witnesses, and adjudication by a neutral committee that put its findings on the record. Once the prisoner has been afforded those protections, our role as the reviewing court is limited to determining whether there was sufficient evidence to support the committee's decision. *Hanrahan,* 747 F.2d at 1137. *See also Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974).

McKinney also puts in issue the standard of review we are to apply. In *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Court held the standard required by due process for judicial review of prison disciplinary proceedings was that the findings must have support from "some evidence in the record." "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 2774.

McKinney contends that the correct standard of review is "substantial evidence,"

under 28 C.F.R. § 541.17(f): "The IDC shall consider all evidence presented at the hearing and shall make a decision in accordance with the greater weight of evidence and one which is supported by substantial evidence manifested in the record of the proceedings." The district court applied the *Hill* standard, but also applied the "substantial evidence" standard in the alternative, finding that the record supports the IDC finding under either standard. After a careful examination of the record, we agree. The choice between the standards thus does not present itself. But we note that McKinney appears to confuse the burden of proof at the hearing itself with the standard of review.

Our holding above that the hearing before an independent disciplinary committee made irrelevant any retaliatory motives on Barker's part in reporting McKinney also moots another issue. One reason that respondent proffered in the district court for the delay in charging McKinney was the ongoing FBI investigation. 28 C.F.R. § 541.14(b)(1) provides that, when an incident may lead to a criminal prosecution, the prison's investigating officer must suspend the inquiry until the FBI completes its interviews or advises that staff investigation may resume. McKinney sought discovery below on the dates of the stages of the FBI investigation in this case. The district court denied his motion and McKinney appeals that ruling. The ruling makes no difference under our holding regarding retaliation. The dates of the FBI investigation, even its existence, are irrelevant.

## VI

For the reasons stated, the judgment of the district court is

AFFIRMED.