**Terrence R. SPELLMON–BEY, Plaintiff,**

v.

**James A. LYNAUGH, et al., Defendants.**

No. 9:90CV87.

United States District Court,
E.D. Texas,
Lufkin Division.

Oct. 29, 1991.

Terrence R. Spellmon–Bey, pro se.

Adrian Young, Asst. Atty. Gen., for the State of Tex., Austin, Tex., for defendants.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Plaintiff Terrence R. Spellmon–Bey is an inmate confined in the Texas Department of Criminal Justice, Institutional Division. On July 5, 1990, he filed this civil action, acting *pro se* and *in forma pauperis*, under 42 U.S.C. § 1983, alleging denial of due process, and cruel and unusual punishment, in violation of the Fourteenth and Eighth Amendments, respectively. Spellmon–Bey also charges that he was the victim of a conspiracy to retaliate against him for his legal activities, and to discriminate against him on account of his race. Finally, he claims that he was treated in a manner that violated the Disciplinary Rules and Procedures of the Texas Department of Criminal Justice.

The action was referred, on July 10, 1990, to a magistrate judge, in conformity with 28 U.S.C. § 636(b)(1) and (3), and the Amended Order of Duties to United States Magistrate, dated July 3, 1980, for findings of fact, conclusions of law, and recommendations for the disposition of the action. On November 13, 1990, the magistrate judge conducted an evidentiary hearing in accord with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir.1985). The magistrate judge, on August 15, 1991, submitted his report and recommendation (hereinafter "Report") that Spellmon–Bey's claims be dismissed as frivolous under 28 U.S.C. § 1915(d). Having received the Report on August 26, 1991, plaintiff Spellmon–Bey filed timely objections to it on August 28, 1991.[1] The district court engages in *de novo* review of the proposed findings and recommendations to which objection has been made. 28 U.S.C. § 636(b)(1). For the reasons articulated below, the Report will be adopted in part and rejected in part, and the action remanded, in order that the magistrate judge can conduct additional hearings in conformity with this opinion.

*Factual Background*

Plaintiff Spellmon–Bey was placed in pre-hearing detention status on March 19, 1990, at the Eastham Unit. On the following day, he was provided with disciplinary report number 475618, charging him with

---

1. "Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1).

threatening to inflict harm, physical or otherwise, on another inmate.[2] The charge is reproduced as follows, with the form's pre-printed text in bold print:

**OFFENSE DESCRIPTION: Place and Location:** <u>H–Line</u>
**Time:** <u>1:00 p.m.</u> **Date:** <u>3–19–90</u> **On the date and at the place above, Inmate** Spellman [sic], Terrance [sic] **TDC No.** <u>486962</u>, was placed in P.H.D. [pre-hearing detention] because he was a threat to physical safety of inmates living on H–Line.
 An investigation has revealed that Spellman [sic] was one of a group of inmates on H–Line running an extortion ring by using strong arm tactics against weaker inmates.
 Spellman [sic] would threaten weaker inmates to get their commissary and to force them into sexual acts.

Witnesses:_____

J. Warren Building Captain
_____
**Reporting Employee's Name (Title & shift/card/location)**

---

On March 27, 1990, Inmate Spellmon–Bey was found guilty of the charge at a disciplinary hearing at which he was represented by counsel substitute.[3] From the Report (p. 2), it appears the disciplinary hearing officer, Captain Sulewski, founded his determination of guilt solely on Captain Warren's testimony that a confidential informant had supplied the basis for the charge.[4] The hearing officer refused to allow three witness to testify on the plaintiff's behalf, concluding they were mere character witnesses. *Id.* The hearing officer also declined to consider documentary evidence that plaintiff contends establishes that it would have been physically impossible for him to have committed the charged offense. *Id.*

As a result of the guilty finding, plaintiff's line class status was reduced, he lost good time, and he was placed in solitary confinement. The Report states that prison officials provided a written copy of the disciplinary findings to Spellmon–Bey's counsel substitute.[5] *Id.* Spellmon–Bey filed numerous grievances concerning the above proceedings, each of which was denied by the warden. He then filed the complaint in this action against Captains Warren and Sulewski, Wardens Barrett and Cooper, and James Lynaugh, Director of the Texas Department of Criminal Justice, demanding a jury trial.

*General Applicable Law*

■■■ As the magistrate judge recognized, *pro se* complaints must be construed liberally and not dismissed, unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief. *Jackson v. Cain,* 864 F.2d 1235, 1264 (5th Cir.1989) (quoting *Taylor v. Gibson,* 529 F.2d 709, 713–14 (5th Cir.1976)). Where, as here, a prison disciplinary hearing may result in the loss of good time credits, a prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses

---

**2.** *TDC Disciplinary Rules and Procedures for Inmates,* Offense # 22, at 11 (July 1986).

**3.** The magistrate judge correctly found that prison officials are not obligated to provide an attorney for disciplinary hearings. However, counsel substitute was provided to plaintiff. *See Ruiz v. Estelle,* 666 F.2d 854, 869 (5th Cir. 1982).

**4.** Plaintiff Spellmon–Bey claims he was ejected from the hearing when he objected to the confidential informer testimony. *TDC Disciplinary Rules and Procedures,* § VI.A., at 6 (July 1986),

allows for the removal of an inmate from the hearing only if the inmate engages in disruptive behavior. The magistrate judge made no findings in this regard, but is directed to discover the truth of this allegation at any subsequent *Spears* hearing.

**5.** A transcript of the proceedings before the hearing officer does not appear in the record. *TDC Disciplinary Rules and Procedures,* § VI.D, at 7 (July 1986), requires a verbatim record of the proceedings to be preserved. Its inclusion would greatly facilitate the ability of this court to make an adequate review of this action.

and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974).

### Inadequate Notice of the Charges

■ Spellmon–Bey's claims that the description of the offense, reproduced above, did not provide him adequate notice of the charges against him. The magistrate judge did not address this argument, nor did he make any findings regarding the plaintiff's deficiency of notice claim. On remand, the magistrate judge should give proper attention to this issue. While it is now impossible to determine whether the notice, under the circumstances, was constitutionally adequate, some general guidance is available: The purpose of the notice requirement is to inform the inmate of the charges and to enable him to marshal the facts and prepare a defense. *Wolff v. McDonnell*, 418 U.S. at 564, 94 S.Ct. at 2978.

In this case, *the offense* with which plaintiff Spellmon–Bey was charged is specified, but the charge does not enable him properly to prepare a defense to it. In essence, Spellmon–Bey was told that an investigation revealed that at some, unspecified, time he had been part of an extortion ring that threatened inmates on H–Line. No specific acts are charged and no times nor places given. The structure of the offense description form contemplates that dates and places for the specific acts *underlying the charge* will be given. In this instance, the time and dates filled in were those of the inmate's *confinement.* This information is of little use in preparing an adequate defense to the charges.

■ It must be kept in mind that the requirements of Due Process in the prison context involve a balancing of inmate rights and institutional security concerns. *Wolff v. McDonnell*, 418 U.S. at 560–63, 94 S.Ct. at 2976–78. Broad discretion must be given to prison officials. *Id.* at 569, 94 S.Ct. at 2981. The United States Court of Appeals for the Fifth Circuit, in *Smith v. Rabalais*, 659 F.2d 539 (5th Cir. Unit A 1981), *cert. denied* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982), carefully weighed these considerations in an analogous situation. In *Smith v. Rabalais* the plaintiff had demanded, through his inmate counsel, specific information regarding the offense with which he was charged: dates, times, places, persons involved, number of acts witnessed, *etc.*, in order to be able to present alibi witnesses or opposing evidence. 659 F.2d at 541–42. The officer who had filed the incident report, Captain Rabalais, refused to turn over the information. The court found, under the circumstances, the revelation of those details would have permitted the identification of the confidential informant who was the sole source for the information, and would have subjected the informant to possible retaliation by the defendant.

■ In its decision, the Fifth Circuit noted that the information that Smith had requested was exceptional, in that the very facts requested were the ones most necessary to the defense, but also most threatening to the legitimate safety concerns of the informant and the prison. 659 F.2d at 544. Therefore, the court ruled:

> In the *exceptional circumstances* before us, we hold that balancing the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution" the defendant prison officials did not abuse their discretion in refusing to require Rabalais to provide the inmate Smith the specific information requested.

*Id.* (quoting *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974) (emphasis added). By construction, under the specific facts of the situation before it, the court held that the threat to the security interests of the institution outweighed the interest of the prisoner.[6]

---

**6.** Technically, the *Smith* court analyzed the information under the second *Wolff* prong, *i.e.,* confrontation and cross-examination. The discretion of prison officials is greater with regard

In the current case, there may well have been specific and articulatable security reasons why prison officials could not have disclosed the time and place of any specific offense with which plaintiff Spellmon–Bey was charged. Since the defendants have not yet answered plaintiff's complaint, there is no way to discover whether this is the case. Without knowing what the specific security concerns facing the prison were in this instance, it is not feasible to determine whether, under the circumstances, the notice to Spellmon–Bey was constitutionally adequate and whether the prison officials abused their discretion. Nonetheless, plaintiff's allegation that the notice violated due process is not frivolous and will not be dismissed under 28 U.S.C. § 1915(d).

### Exclusion of the Witnesses and Documentary Evidence

Plaintiff Spellmon–Bey also challenges the exclusion of witnesses and documentary evidence at the disciplinary proceedings. The magistrate judge specifically upheld the exclusion of the witnesses, (Report at 4), but failed to consider the plaintiff's challenge to the exclusion of the documentary evidence.

As noted above, an inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979. Under the *Ruiz v. Estelle*

order, § IV.A.10, a prisoner may call witnesses, unless the testimony is likely to jeopardize the life or safety of persons or the security and order of the institution.[7] While prison officials possess considerable discretion in this area, they must explain why witnesses were not allowed to testify, either at the disciplinary proceeding or subsequently, in response to a prisoner lawsuit. *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985).[8] Otherwise, prison officials' exercise of their discretion would become unreviewable. *Id.* at 498–99, 105 S.Ct. at 2196–97.

The hearing officer rejected the testimony of the Spellmon–Bey's witnesses, because he concluded they were "character witnesses," a determination that the magistrate judge found to be constitutionally sufficient. (Report at 4.) Spellmon–Bey claims that the inmates would have testified that he was *not the type of person to engage in extortion*. Such evidence is relevant.[9] *Cf.* Fed.R.Evid. 404(a)(1). To label proffered testimony as "character evidence" is to describe the nature of the evidence, not a reason for its exclusion.

Therefore, the magistrate judge should conduct further proceedings to discover whether the proffered testimony would have been "unduly hazardous to institutional safety or correctional goals and legitimately excluded", or have been "likely to jeopardize the life or safety of persons or the security and order of the institution."[10] In order to make this determina-

---

to confrontation and cross-examination than with notice. *Wolff*, 418 U.S. at 567–69, 94 S.Ct. at 2980–81. Therefore, the balance regarding notice should be at least as favorable to the inmate as under confrontation.

**7.** *See* 666 F.2d 854, 869 (5th Cir.1982). The order was not challenged on appeal by the defendants, and was affirmed. *Ruiz v. Estelle*, 679 F.2d 1115, 1163–64 (5th Cir.1982).

**8.** *TDC Disciplinary Rules and Procedures for Inmates*, § VI.B.4, at 6 (July 1986), states that "If witnesses are denied, written reasons must be provided in the records of the committee's decision."

**9.** A disciplinary procedure that results in a loss of good time credits is not a criminal trial.

*Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (citing *Wolff v. McDonnell*). However, the institutional concerns that have lead to the application of fewer procedural protections to defendants in disciplinary hearings do not alter the type of evidence relevant and admissible to defending a charge. There is no support for the position that character evidence is *per se* irrelevant and inadmissible in defending against a charge of extortion in a disciplinary hearing.

**10.** Although not cited by the magistrate judge, plaintiff quotes *TDC Disciplinary Rule and Procedure*, § VI.B.4, at 6 (July 1986), which states:

The inmate may call witnesses, unless the committee decides that testimony of such witnesses is likely to jeopardize the life or safety

tion, the magistrate judge should ascertain the substance of the testimony the witnesses would have given. In assessing the relevance of any proffered testimony, the broad nature of the charge, that plaintiff at some point engaged in extortion on H–Line, must be given due consideration.

 The standards governing the exclusion of documentary evidence are identical with those for the exclusion of witnesses. The magistrate judge made no findings regarding the exclusion of documentary evidence (a cell restriction list) that allegedly would have proved that inmate Spellmon–Bey could not have committed the charged offense because he was in a "cell restriction" status. The hearing officer, Captain Sulewski, excluded the evidence, stating that Spellmon–Bey's status was "loss of privilege" not "cell restriction". Plaintiff argues that the terms are synonymous.

If they are actually synonymous terms, or if it is the case that "loss of privilege" status would have made it nearly impossible for him to have committed the offense, then the evidence could be highly probative of Spellmon–Bey's innocence. If so, absent a legitimate threat to institutional safety or correctional goals,[11] exclusion of the evidence would have been arbitrary, capricious, and an abuse of discretion.[12] As with the exclusion of the witnesses' testimony, to gauge whether the exclusion of the documentary was an abuse of discretion, the magistrate judge must conduct further proceedings and must discover the nature and content of the rejected docu-

mentary evidence. Without further hearings on this matter, it cannot be concluded that plaintiff's claims in reference to the exclusion of the proffered witnesses and documentary evidence are frivolous under 28 U.S.C. § 1915(d), and they should not be dismissed at this time.

## The Basis for the Finding of Guilt

 "The revocation of good time credits does not comport with 'the minimum requirements of due process ... unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citing *Wolff v. McDonnell*). The magistrate judge found the testimony of Captain Warren, which was based solely on the word of a confidential informer, to be "some evidence," despite the fact that the discipline officer did not find the informant to be credible and reliable. (Report at 4–5). Plaintiff objected, citing nonbinding case law from outside this Circuit. Because the magistrate judge's decision runs counter to the rulings of seven other judicial circuits,[13] and because the only relevant precedent from Fifth Circuit suggests that some sort of independent determination of an informant's credibility and reliability is required, the magistrate judge's determination in this regard is rejected.

The magistrate judge correctly recognized that this is an evolving area of the

of such person of the security and order of the institution.
This appears to embody the *Ruiz v. Estelle* order.

**11.** In this case, it is difficult to conjecture how allowing the evidence to be admitted would interfere with institutional safety, the need for swift punishment, or the requirements of security and order at the institution.

**12.** Once again, plaintiff cites an applicable *TDC Disciplinary Rule and Procedure,* § VI.B.3, at 6 (July 1986), which reads:
 The accused inmate, or his/her counsel substitute, may present documentary evidence. Documentary evidence must be accepted into evidence unless it is clearly irrelevant or repetitious.

While it would be premature to conclude that this regulation invests inmates with a liberty right, the magistrate judge should make findings on this issue guided by the relevant precedents: *e.g. Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Gibbs v. King,* 779 F.2d 1040, 1045 (5th Cir.1986). The mandatory language of this provision is of note and would indicate the existence of a liberty right.

**13.** The United States Courts of Appeals for the First, Second, and District of Columbia Circuits have not ruled on the question. The Fourth Circuit noted, without explicitly adopting, the decisions explicated below in a case where there was independent corroborative evidence of the confidential informant's testimony. *Barker v. Lyles,* 904 F.2d 925, 931–33 (4th Cir.1990).

law. He interpreted *Smith v. Rabalais* to hold that due process does not require a hearing officer to determine independently that an informant is credible and his information reliable. (Report at 4.) The issue in *Smith v. Rabalais* was whether a finding of guilt grounded only in the testimony of a investigating officer, which, in turn, was based entirely upon the information from an unidentified prison informant, was arbitrary and capricious.[14] The court "hesitatingly held" that, under the exceptional circumstances presented to it, which were outlined *supra*, the action of the prison board was not arbitrary and capricious. 659 F.2d at 546 & 546 n. 20.

However, in *Smith v. Rabalais*, the prison discipline board performed an independent evaluation of the credibility and reliability of the informers. The board asked the investigating officer, Rabalais: (1) whether he knew the informers; (2) if he had used them in the past; and (3) whether the informers had firsthand knowledge. 659 F.2d at 541, 546. The Board did not take the word of the investigating officer as to the informants' credibility, but clearly engaged in an inquiry of its own.[15] Explicitly recognizing that due process in the prison context was an evolving concept and that the facts of the case before it were exceptional, in *Smith v. Rabalais*, the Fifth Circuit, in sum, approved the inquiry of the prison board regarding the credibility and reliability of the informants. 659 F.2d at 546.

Clearly, *Smith v. Rabalais* does not hold that a hearing officer need take no steps to determine whether the informant is reliable and credible.[16] Moreover, the case is a decade old, and as the panel noted, at the time marked the "outer contours of the prison discipline due process rule." *Id.* In the ensuing years, the decisions of eight federal judicial circuits have filled in those contours as to the nature of the credibility/reliability determination the hearing officer must make.

As the magistrate judge noted, the Eleventh Circuit, in *Kyle v. Hanberry*, 677 F.2d 1386, 1390–91 (11th Cir.1982), required that "where the [discipline] committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the [discipline board] undertake in good faith to establish the informant's reliability to its own satisfaction." Moreover, the court ruled that the disciplining authority should describe the nature of this inquiry, to the extent it would not identify an informant. 677 F.2d at 1390. Drawing upon the procedures approved in *Smith v. Rabalais*, the Eleventh Circuit opined that due process may be satisfied by the three step process outlined in that case. *Id.*

The Seventh Circuit has held that the record of a prison disciplinary hearing must reflect sufficient indicia of the informant's reliability. *McKinney v. Meese*, 831 F.2d 728, 731 (7th Cir.1987). It has ruled that any one of four methods may be used:

(1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, "he had first hand knowledge of the sources of information and considered them reliable

---

**14.** *Hill, supra,* had not been decided yet, but the "arbitrary and capricious" standard and the "some evidence" standard are functionally the same.

**15.** Courts employ the terms "credibility" and "reliability" interchangeably to refer to two different concepts. Though related, one has to do with the accuracy of the information, the other with the veracity of the source. In other words, the prison board must determine whether the informant is either mistaken or mendacious.

*Cf. Illinois v. Gates,* 462 U.S. 213, 227–30, 103 S.Ct. 2317, 2326–2338, 76 L.Ed.2d 527 (1983).

**16.** Indeed, the United States Courts of Appeals for the Ninth and Eleventh Circuits cited *Smith v. Rabalais* for the proposition that due process did require some sort of independent inquiry by the disciplinary board. *Zimmerlee v. Keeney,* 831 F.2d 183, 186 (9th Cir.1987) (per curiam), *cert. denied sub nom. Zimmerlee v. Maass,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988); *Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir.1982).

on the basis of 'their past reliability.' ";
or (4) *in camera* review of the material documenting the investigator's assessment of the credibility of the confidential informer.

*Id.* (citations omitted). The factual basis for the finding of reliability need not be given to the inmate, but reviewing courts must satisfy themselves that the informant was reliable. *Id.*

A number of Circuits have either adopted or endorsed this approach, although some with caveats or modifications. The Tenth Circuit has concurred with the Seventh's analysis, saying:

> The touchstone is reliability. Any reasonable basis for establishing the credibility of the informant's information, including such techniques as outlined by the Seventh Circuit ... referred to above is acceptable. The disciplinary committee *must* make a reliability determination prior to its decision, using any of the methods referred to above or upon any other reasonable basis having a factual underpinning.

*Taylor v. Wallace,* 931 F.2d 698, 702 (10th Cir.1991) (emphasis added).

With a small qualification, the Eighth Circuit has approved the above reasoning. *Freitas v. Auger,* 837 F.2d 806, 810 & n. 9 (8th Cir.1988).[17] The court explicitly held that the district court must confirm the reliability of the informant in some manner.[18] The Ninth Circuit has also adopted the Seventh Circuit's four-option test. *Zimmerlee v. Keeney,* 831 F.2d 183, 186–87 (9th Cir.1987) (per curiam), *cert. denied sub nom. Zimmerlee v. Maass,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988). It also ruled

> that a prison disciplinary committee's determination derived from a statement of an unidentified informer satisfies due process (1) when the record contains

some factual information from which the committee can reasonably conclude that the information was reliable and (2) the record contains a prison official's affirmative statement that safety consideration prevent the disclosure of the informant's name.

*Id.* at 186 (citation omitted). Both determinations should be reviewed under a deferential standard. *Id.*

The United States Court of Appeals for the Sixth Circuit has eloquently articulated the dangers of a prison disciplinary board's accepting the investigating officer's conclusion of reliability without making an independent determination:

> In cases in which prisoner misconduct is found upon evidence consisting entirely, or even substantially, of the statement of an investigating officer that he has been told by confidential informants that the misconduct occurred, and that the investigator believes the informant to be reliable, there must be some independent determination by the committee of the informant's reliability. In such cases, unless the committee makes an independent determination of about what facts of the alleged misconduct are by deciding, minimally, that the hearsay information has been supplied by a reliable informant, it is merely recording the findings made by the investigating officer who has made a determination about the informant's reliability, without making any determination for itself about the informant's reliability or even the basis for the investigator's opinion that the information is reliable. To proceed in that fashion is not fact finding, it is record keeping.
>
> In its best light, such a procedure is an unwarranted delegation to the investigator of a key aspect of the committee's adjudicative function; at its worst, it suggests a wilful reluctance to probe the

---

17. It did point out that the Seventh Circuit's four options were not exclusive, and that one of them used alone did not necessarily suffice. 837 F.2d at 810 n. 9.

18. While it is true that *Hill, supra,* 472 U.S. at 455, 105 S.Ct. at 2774, contemplates that district courts will seldom make independent assess-

ment of the credibility of witnesses, the Eighth Circuit reasoned that the reliability of confidential informants was "a different matter." *Freitas v. Auger,* 837 F.2d at 810 n. 8; *see also Helms v. Hewitt,* 655 F.2d 487, 502 (3rd Cir.1981) *rev'd on other grounds* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

possibly flawed foundation of the charges against inmates. Reliance upon an investigating officer's statement that an informant is reliable is not necessarily a fatal procedural flaw, but if the committee does not discover, and assess, the investigating officer's *basis* for concluding that informant is reliable, it cannot be said that the committee has made reasoned choices about the truth of the information provided to it, as minimum due process requires it to do....

....

At a very minimum, the investigator must report that a particular informant has proved reliable in specific past instances or that the informant's story has been independently corroborated on specific material points.

*Hensley v. Wilson,* 850 F.2d 269, 276–77 (6th Cir.1988) (emphasis in original).

Agreeing, the United States Court of Appeals for the Third Circuit has recently reiterated:

We have warned against hearing officers [sic] relying exclusively upon a prison employee's oral summary of information implicating the prisoner.... We have held that:

A determination of guilt on such a record, with no primary evidence of guilt in the form of witnesses statements, oral or written, or any form of corroborative evidence, amounts to a determination on the blind acceptance of the prison officer's statement. Such practice is unacceptable; it does not fulfill *Wolff*'s perception of "mutual accommodation between institutional needs and objections" and the constitutional requirements of due process.

*Young v. Kann,* 926 F.2d 1396, 1402 (3rd Cir.1991) (citations omitted).

In the present case, there is no evidence that the hearing officer made any sort of independent credibility and reliability determination.[19] From the Report it appears that the hearing officer, Captain Sulewski,

relied exclusively on the determination made by the charging officer, Captain Warren. Because it allegedly comported with Texas prison regulations, the magistrate judge upheld the procedure that was followed.

Although these regulations are neither cited nor reproduced, it appears from the Report that they require only that an officer of at least the rank of captain talk to the informant and determine whether to proceed. If this is all the regulations state, their constitutionality would be in doubt. However, in this case, the charging officer was the captain who made the determination to proceed. A procedure that allows the charging officer to be the exclusive judge of the reliability of the confidential informant is precisely that which the Sixth and Third Circuits have so strenuously warned against. It also violates the principle adopted by eight federal judicial Circuits, including the Fifth Circuit, that the hearing officer must make an independent determination of credibility and reliability.

Therefore, the magistrate judge's determination that the finding of plaintiff Spellmon–Bey's guilt was supported by some evidence is rejected, since the determination was based solely on Captain Warren's testimony of the hearsay statements of an unidentified informer whose credibility and reliability were not independently evaluated. The magistrate judge is directed to undertake any further procedures necessary to determine whether the hearing officer made an independent evaluation of the credibility and reliability of the informant in a fashion that fulfilled the principles of due process explicated in this opinion.

*Other Claims*

▪ Plaintiff Spellmon–Bey failed to object to the portions of the Report that determined to be frivolous his claims (1) that the charges were filed against him as a result of his legal activities; (2) that they were filed as a result of racism; and, (3) that there was a conspiracy against him. The magistrate judge recommended dismis-

---

**19.** Once again, because not even a summary of the record of the hearing has not been provided, it is impracticable to determine precisely what occurred at the hearing. Therefore, it is imperative that such a record be provided to facilitate review.

sal. In the absence of such an objection, the rule in this Circuit is that a party is not entitled to *de novo* review of a magistrate judge's finding and recommendation. *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988). Therefore, these findings and recommendations are adopted.