**Ronald HENSLEY, Scott Payne, Jeff Keithly, and Rodney Stevens, Plaintiffs–Appellees,**

v.

**George WILSON, Al C. Parke, Tim Barnes, J.W. Travis, Bobby Burchett, and Harry Barnett, Defendants–Appellants.**

No. 86–5547.

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1987.

Decided June 20, 1988.

---

Barbara W. Jones, Linda G. Cooper, David A. Sexton (argued), Corrections Cabinet, Office of General Counsel, Frankfort, Ky., for defendants-appellants.

Tod D. Megibow (argued), Freeland, Glanville and Megibow, Paducah, Ky., for plaintiffs-appellees.

Before KENNEDY, RYAN and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

This is an appeal from a summary judgment and an award of injunctive relief in favor of prison inmates who brought a 42 U.S.C. § 1983 civil rights action against Kentucky correction officials. The prisoners complain that the manner in which prison disciplinary hearings were conducted, in which they lost good time credits, did not afford them procedural due process. The prisoners' principal complaint is that their request to know the substance of the evidence that was considered by the committee in support of the charges against the prisoners, and the identity of the confidential informants who supplied the evidence, was refused.

The trial court agreed with some but not all of the plaintiffs' complaints. It set aside the findings of the disciplinary committee finding a denial of due process, ordered that the prisoners' disciplinary records be expunged of matters relating to the proceedings reviewed, directed that new hearings be held, and determined that the defendant state correction officials did not enjoy qualified immunity.

We affirm a portion of the injunctive relief ordered by the district court but reverse the court's finding of other constitutional inadequacies in the disciplinary hearing procedures, and reverse its holding that the defendants are not entitled to qualified immunity.

Although the plaintiffs make a number of claims and the defendants respond to each, we are able to dispose of all of them by addressing two issues:

1. Whether the defendant state corrections officials are entitled to qualified immunity, and

2. Whether, as the district court found, a prison disciplinary committee, relying substantially upon information supplied by confidential informants when ordering the forfeiture of an accused prisoner's good time, must make an independent assessment of the informant's reliability and a contemporaneous record of that assessment.

Our answer to both questions is yes, although, with respect to the informant reliability issue, we hasten to add that the contemporaneous record of the committee's findings concerning informant reliability need not be a public record accessible to the charged inmates when prison security interests are involved.

## I.

All four plaintiffs are inmates of the Kentucky State Penitentiary who were charged with disciplinary violations of the prison involving extortion, blackmail, assault by stabbing, and conspiracy to assault. Each plaintiff received notice of the charges against him in the form of a brief and an unelaborated description of the relevant offense. All four were found guilty almost entirely on the strength of information provided to prison investigators, in confidence, by inmate informants. The informants did not testify before the disciplinary committee. Rather, the committee received and considered the unsworn written report of the investigators, the contents of which has not been revealed to the plaintiffs, their counsel, the district court, or this court, and which apparently contains

the investigators' conclusions, based on the information supplied by the informants, that plaintiffs are guilty of the misconduct charges against them. No details about the identity, reliability or credibility of the informants was provided to the inmates, and all of the plaintiffs' inquiries to the committee, seeking information about the offenses charged such as dates or times of alleged violations or the names of supposed victims, were answered with the statement by the committee chairman that the information was confidential.

The only reference in the disciplinary committee findings as to the reliability of the informants is that the investigating officers "testified" that the confidential "information given them is reliable," or that "their source of information is reliable." In the case of plaintiff Stevens, the committee findings do not contain even the general statement that the investigators represented that the confidential informants were reliable.

None of the cases include a committee finding that either the confidential informants or their information was determined by the committee to be reliable. Plaintiff Payne presented an alibi witness, but the record contains no reference to why the witness' testimony was not credited. All four plaintiffs received the maximum disciplinary sentence for their various offenses: one hundred thirty-five to one hundred eighty days in disciplinary segregation and, in three of the four cases, the loss of six to twenty-four months of "good time" credit. Stevens lost no good time solely because he is serving a life term. All four appealed to the prison warden, who affirmed the disciplinary actions. Plaintiffs then brought this § 1983 suit, claiming, among other things, procedural due process violations, and seeking injunctive relief and monetary damages.

Both sides moved for summary judgment. The district court granted plaintiffs' motion, principally because the disciplinary committee failed to evaluate for itself the reliability of the informant testimony relied upon. The district court also rejected defendants' claim of qualified immunity, but

ordered only injunctive relief in conjunction with the summary judgment order: the plaintiffs' records were to be expunged of all references to the disciplinary hearings and the defendants were ordered to provide new hearings "consistent with this opinion and the standards of due process."

Defendants then moved to alter or amend the judgment, citing two recent decisions, *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), and *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). The motion was denied in an opinion which stated that the newly cited cases did not require a different result than had been ordered previously.

Defendants appealed. Plaintiffs moved to dismiss the appeal on the ground that the order was not appealable. This court rejected plaintiffs' theory that the order was not final, holding that the order was an appealable injunction. However, we deferred consideration, until after oral argument, of plaintiffs' theory that defendants are not entitled to qualified immunity. We therefore begin by addressing the immunity issue.

## II.

■ Defendants' claim of qualified immunity is governed by *Mitchell v. Forsyth* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1972), the Supreme Court held that:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. In *Mitchell,* the Court decided that the denial of a claim of qualified immunity is "an appealable 'final decision' within the meaning of 28 U.S.C. § 1291," 472 U.S. at 530, 105 S.Ct. at 2817, insofar as the suit is one for damages. *Mitchell* stated the rule that:

Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

*Id.* at 526, 105 S.Ct. at 2815.

Defendants appear to have abandoned their claims of absolute immunity, and injunctive relief has been ordered that would be permissible even if defendants are entitled to qualified immunity under *Mitchell* and *Harlow.* The issue of appealability does not depend upon the immunity issue, because the appeal is proper on an independent ground, the injunctive nature of the relief already ordered. Thus, the immunity issue is pertinent only to the question of whether, if this court affirms, plaintiffs may proceed to seek monetary damages from these defendants. Under *Mitchell,* this issue is resolved by the answer to the question of whether plaintiffs' allegations state a claim of violation of "clearly established law."

The district court thought that the pertinent law here was "clearly established" at the time of the alleged violations. The principal authority on what process is due in prison disciplinary hearings is still *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that, despite the limits lawful incarceration places upon prisoners' rights, they are nonetheless entitled to advance written notice of charges against them and "a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 94 S.Ct. at 2978. While the Court did not explain in detail exactly what must be in the written statement, it did describe the reasons for requiring the statement, and what the Court said is enlightening about what the written statement should contain:

> Written records of proceedings will ... protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety are so implicated, that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

*Id.* at 565, 94 S.Ct. at 2979. Elsewhere in the opinion, the Court described some of the constraints upon affording full due process rights to prisoners:

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.

*Id.* at 562, 94 S.Ct. at 2978. These comments show that the Court was primarily concerned with obtaining a reviewable record which demonstrates that the prisoner has been treated fairly and was permitted to mount a meaningful defense. There is only an indirect concern with explaining to the inmate exactly what the evidence is and how it was obtained. These comments also directly authorize the exclusion of "certain items of evidence" from the public record, and indirectly suggest that one reason for such exclusion might be the need to protect informants from retaliation.

While the problem of information supplied by informants was foreshadowed in *Wolff,* the *Wolff* Court was not called upon

to resolve such issues as how carefully the reliability of informant evidence must be evaluated, whether there should be any checks against the possibility of inmates using informant status as a means of retaliation against other inmates, whether the inmate has any right to know the identity of the informant or the precise contents of an informant's statement, and how to deal with "confidential" information in a disciplinary committee's "written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 94 S.Ct. at 2978. Those questions have been addressed in subsequent circuit court decisions.

Thus, it cannot be said that *Wolff* alone "clearly established" the law defendants were found to have violated here. For this, the district court looked principally to two cases, *Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir.1982), and *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). In *Chavis*, a prisoner was disciplined for an attack on a corrections officer, Sipp. The court held that a prison disciplinary committee violated the prisoner's right, under *Wolff*, to receive a written statement of the evidence relied on and reasons for the action taken, by issuing a statement saying only:

> "We recognize and consider the resident[']s statement[,] however[,] we accept the reporting officer[']s charges." It did not mention what evidence the reporting officer relied on, the investigatory report containing exculpatory evidence, or Officer Sipp's earlier report. It gave no clear indication of why the reporting officer was to be believed rather than Chavis or Officer Sipp. The statement thus falls far short of *Wolff's* requirement that a written record of the proceedings be provided in order to protect the inmate against collateral consequences and to insure that prison officials acted fairly.

*Id.* at 1287. While the reports in this case were arguably as conclusory and uninformative as the one in *Chavis*, *Chavis* did not address the question of whether reliance upon confidential informants could justify such an approach to the written statement requirement.

*Kyle*, on the other hand, did address the problem of informant reliability, and how this problem affects the written statement. Kyle was found guilty by an Inmate Disciplinary Committee largely on the confidential testimony of inmate informants who were not identified in the record and did not appear before the committee, but who were referred to in the committee's report as "reliable." Reading *Wolff* as primarily concerned with "preventing arbitrary determinations," the Eleventh Circuit reasoned that,

> [T]o make a decision based on the factual evidence presented, part of a disciplinary committee's task must be to make a bona fide evaluation of the credibility and reliability of that evidence. In a prison environment, where authorities must depend heavily upon informers to report violations of regulations, an inmate can seek to harm a disliked fellow inmate by accusing that inmate of wrongdoing. Since the accuser is usually protected by a veil of confidentiality that will not be pierced through confrontation and cross-examination, an accuser may easily concoct the allegations of wrongdoing. Without a bona fide evaluation of the credibility and reliability of the evidence presented, a prison committee's hearing would thus be reduced to a sham which would improperly subject an inmate accused of wrongdoing to an arbitrary determination.

> The procedures necessitated by the obvious dangers to an inmate are limited by a prison's peculiar needs. Specifically, because a prison needs informants in order to maintain a system of order, an institution must protect those who accuse their fellow inmates.

> Balancing these considerations, we believe that where a committee imposes a sanction as severe as the one here, and where the committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the IDC [Inmate Disciplinary Committee] under-

take in good faith to establish the informant's reliability, at least to its own satisfaction. There must be some information on the record from which a tribunal can reasonably conclude that the IDC undertook such an inquiry and, upon such inquiry, concluded that the informant was reliable. The committee should describe the nature of its inquiry to the extent that the committee is satisfied that such disclosure would not identify an informant.

*Kyle,* 677 F.2d at 1390 (footnote omitted). Under *Kyle,* decided the year before hearings in this case, the conclusory statements in plaintiffs' cases that the informants were reliable are patently inadequate.

A single recent case from a neighboring circuit holding a particular way, however, hardly suffices to make the law "clearly established" in this circuit. The point of the *Mitchell* test is to establish good faith, as indicated by "whether the law clearly proscribed the actions the defendant claims he took." 472 U.S. at 528, 105 S.Ct. at 2816. Even assuming that defendants here had carefully read the *Kyle* case, they would have been entitled to act somewhat at variance with its dictates in the belief that this circuit might interpret *Wolff* differently.

*Kendrick v. Bland,* 541 F.Supp. 21 (W.D. Ky.1981), on the other hand, was a published decision directly applicable, and presumptively familiar, to these defendants. The district court in *Kendrick* found that the informant system in the Kentucky State Prison "led to the imposition of arbitrary and harsh disciplinary action against inmates," *id.* at 24, and held that:

The use of the informant system as outlined in the Court's Findings of Fact is destructive of the penological goals adopted in *Rhodes v. Chapman* [452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)], *supra,* and the goals of deterrence, security, and rehabilitation as evaluated in *Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed. 2d 495 (1974). Such a system, when operating (as was the case here) without close supervision and strict guidelines, breeds mistrust and disrespect for au-

thority while jeopardizing the safety and security of both prisoners and guards. *Id.* at 26. The court's holding, in an opinion published shortly before the events in this case, that the prison's informant system violated the eighth amendment to the federal constitution, surely must have alerted any prison official acting in a good-faith effort to comply with the law that the use of inmate informants must be carefully circumscribed.

The question here, however, is whether *Kendrick* clearly prohibited the procedures followed in the case before us, and the answer is that it did not. The remedy for the violations found in *Kendrick* came in the form of a consent decree setting forth detailed guidelines designed to prevent the recurrence of past abuses. The guidelines on "due process" detailed the procedures to be followed in "disciplinary procedures leading to confinement in punitive segregation, administrative segregation, or the administrative control unit." The most pertinent portions of these guidelines provided for a hearing at which the inmate charged would have:

3) . . . .

(e) An opportunity to call witnesses on his behalf, unless doing so would be unduly hazardous to institutional safety, such reasons for denial to be stated in writing;

(f) An opportunity to confront and cross-examine his accuser and all adverse witnesses, unless doing so would be unduly hazardous to institutional safety.

4) At the conclusion of the hearing, the Adjustment Committee shall preserve the tape record and prepare a written record, which shall include (a) the committee's decision, (b) the sentence imposed and the criteria used for imposing the particular sentence, (c) a summary of the evidence upon which the decision and sentence were based, (d) a list of all witnesses, (e) a statement as to whether the sentence may be stayed during an appeal and the reasons for that decision,

(f) the date and time of the hearing, and (g) the signatures of all Committee members. A copy of this record shall be given to the inmate.

*Id.* at 32. These guidelines expressly authorize the procedure of preventing the inmate from confronting an informant, if justified in the name of "institutional safety." Unlike the similar and immediately preceding provision concerning the denial of witnesses requested by the inmate, this provision does not require a written statement of the committee's reasons for permitting secret accusations. Nor does the list of requisite elements of the written hearing record include explanation of the basis for the committee's reliance upon particular informants. *Kendrick* did not clearly proscribe the procedures defendants followed in plaintiffs' hearings.

We conclude, therefore, that defendants are entitled to qualified immunity under *Mitchell*, because any violations they committed were not of "clearly established law." They are therefore immune from claims against them for damages. This does not dispose of the suit, however, because there remains the question whether injunctive relief is appropriate.

### III.

The district court's principal objection to the procedures defendants followed in plaintiffs' disciplinary hearings was that there was no "independent assessment" by the disciplinary committee of the reliability of the inmate informants upon whom it relied. A distinct, but closely related, objection was that the written statements of the committee's findings, mandated by *Wolff*, were deficient because they did not set forth the *reasons* for finding the inmate informants to be reliable. The district court also faulted the written statements for (1) containing too little evidence in support of the decisions made, and (2) failing to explain, in the case of inmate Payne, why the committee did not credit the testimony of Payne's alibi witness.

### A.

It is hardly debatable that a prison disciplinary committee charged with the responsibility of finding facts for the purpose of determining whether there is some evidence to support an allegation that an inmate is guilty of a disciplinary violation must assess both the sufficiency of the evidence and the credibility of the witnesses who provide it. Assessment of the reliability of inmate informants is an essential prerequisite to imposing discipline for violations established through the use of informant testimony. Defendants have not contended that no such assessment need be made, and it would appear to be self-evident that no adjudicative conclusion can be reliable, and no meaningful due process can be accorded, if accusations are accepted at face value, with no consideration of their source.

■ Defendants' position is that the committee satisfied its obligation of determining that the information supplied by the informants in this case is reliable, by accepting the investigating officer's conclusion that it is. We disagree.

In cases in which prisoner misconduct is found upon evidence consisting entirely, or even substantially, of the statement of an investigating officer that he has been told by confidential informants that the misconduct occurred, and that the investigator believes the informant to be reliable, there must be some independent determination by the committee of the informant's reliability. In such cases, unless the committee makes an independent determination about what the facts of the alleged misconduct are by deciding, minimally, that the hearsay information has been supplied by a reliable informant, it is merely recording the findings made by the investigating officer who has made a determination about the informant's reliability, without making any determination for itself about the informant's reliability or even the basis for the investigator's opinion that the informant is reliable. To proceed in that fashion is not fact finding. It is recordkeeping.

■ In its best light, such a procedure is an unwarranted delegation to the investigator of a key aspect of the committee's

adjudicative function; in its worst, it suggests a willful reluctance to probe the possibly flawed foundation of the charges against inmates. Reliance upon an investigating officer's statement that an informant is reliable is not necessarily a fatal procedural flaw, but if the committee does not discover, and assess, the investigating officer's *basis* for concluding that the informant is reliable, it cannot be said that the committee has made reasoned choices about the truth of the information provided to it, as minimum due process requires it to do. While the Due Process Clause does not, in prison discipline cases, require the appearance of the confidential informant before the adjudicating committee, or that the informant's identity be disclosed to the accused, or even to the disciplinary committee members, it requires at the very least that the committee have some evidentiary basis, even hearsay, upon which to determine for *itself* that the informant's story is probably credible.

At a very minimum, the investigator must report that a particular informant has proved reliable in specific past instances or that the informant's story has been independently corroborated on specific material points. Such information, although skeletal, would enable the committee to come to a reasoned conclusion that the informant is reliable and, therefore, that the story he has related to the investigating officer is likely to be true. As the district court correctly found, no such "independent assessment" was made in any of the cases before us.

### B.

The district court also faulted the committee for failing to produce written findings that "adequately explain the facts relied upon or adequately show that the confidential evidence relied upon was reliable." It held, in addition, that "the committee must make findings as to credibility and explain its reasons for relying on a particular witness's testimony."

■ As we have indicated earlier, the principal reason the Supreme Court commanded in *Wolff* that prison disciplinary authorities prepare a "written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action" is to enable reviewing courts to obtain a reviewable record that demonstrates that the prison disciplinary hearing was conducted fairly. Such a record must demonstrate, at a minimum, that the committee members received information which provides some evidence that the charged misconduct occurred and, when the evidence is only the hearsay repetition of information supplied by otherwise unidentified confidential informants, that the committee determined for itself, on some reasoned basis, that the informants and their information were reliable. The Supreme Court has recently set forth the standard for the quantum of evidence that must appear in the written statement explaining a disciplinary action:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." *United States ex rel. Vajtauer v Commissioner of Immigration,* 273 U.S. [103] at 106, 47 S.Ct. 302, 71 L.Ed. 560 [1927]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; *United States ex rel. Tisi v. Tod,* 264 U.S. 131, 133–134, 44 S.Ct. 260 [260–261], 68 L.Ed. 590 (1924); *Willis v Ciccone,* 506 F.2d 1011, 1018 (8th Cir. 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See

*Wolff,* 418 U.S., at 562–563, 567–569, 94 S.Ct. 2963 [2977–2978, 2980–2981], 41 L.Ed.2d 935, 71 Ohio Op.2d 336. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id., at 556 [94 S.Ct., at 2974], and neither the amount of evidence necessary to support such a conviction, see *Jackson v Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

*Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

[█] We have no difficulty concluding that this standard permits written committee finding which do not explain why or to what extent each witness was believed or disbelieved. The absence of such an explanation does not mean, of itself, that there is no "basis in fact" for the committee's action. Thus, the committee's failure to explain, for example, why Payne's alibi was not believed did not deny due process.

The disciplinary committee's obligation to make a reviewable record of informant reliability and informant evidence in support of the charge is a more complex issue. *Wolff* mandated a posture of "reasonable accommodation between the interests of the inmates and the needs of the institution." 418 U.S. at 572, 94 S.Ct. at 2982. The public record provided to the plaintiffs in this case contains only conclusory assertions of informant reliability, and then only the investigating officer's, not the committee's, and the most skeletal of descriptions of the offenses charged. In the district court's view, "The committee provide[d] no evidence in the record to support its decision." However one characterizes the quantum of evidence in the committee's findings, the scant record made in this case plainly disserves the interest of prisoners in receiving a fair hearing, because the sketchiness of the charges makes mounting a defense a difficult and haphazard business and because meaningful judicial review of such a record will generally be impossible.

Defendants contend, however, that the process due to prisoners under *Wolff,* in the form of a written statement of facts and reasons in support of disciplinary action, must yield to the prison's "institutional needs and objectives," *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975, of reliance upon anonymous inmate informants to discover and punish prisoner misconduct.

It is obvious and well-settled that courts have a "very limited role" to play in the administration of prisons. *Block v. Rutherford,* 468 U.S. 576, 584, 104 S.Ct. 3227, 3231, 82 L.Ed.2d 438 (1984). Concededly, prison administrators must be accorded

> wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Id.* at 585, 104 S.Ct. at 3232 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)). We do not question the decision of prison officials to employ the services of anonymous informants. This court is obligated, however, to respond to prisoner complaints that the limited due process rights remaining to them while they are imprisoned have been sacrificed *unnecessarily* under the pretext of protecting inmate informants.

[█] Plaintiffs initially demanded that the information considered confidential by defendants be made public and accessible to inmates charged with disciplinary violations. We reject that contention, however. The Supreme Court held in *Wolff* that prisoners do not have a constitutional right to confront and cross-examine witnesses in disciplinary proceedings. 418 U.S. at 567–68, 94 S.Ct. at 2980–81. By the same token, prisoners do not necessarily have a right to know even the identity of their accusers. Furthermore, defendants' rationale for withholding this information is plainly legitimate. When a case is built upon the testimony of an inmate informant, the mere fact that a particular charge is brought, often notifies the inmate charged,

that an informant is at work and that it must be someone with access to particular information. It may require very little additional information for the inmate to narrow down the field of possible informants to the point that retaliation may be undertaken. For anonymity to be preserved, it is not enough to keep informants' names out of the public record; prison officials must also take care to keep all clues to informant identity out of that record.

We agree with defendants that they should not be required to make available to inmates information that seems, in the judgment of prison officials, likely to permit the identity of an inmate informant to be inferred. In *Kyle*, the court held that the inquiry into informant reliability should be described in the record "to the extent that the committee is satisfied that such disclosure would not identify an informant." The committee here determined that providing more information to the plaintiffs could disclose informant identity. Deference to the committee's judgment on this point is demanded by the legitimate concern with protecting the anonymity, and thus the safety, of prison informants. To the extent that the courts have specifically addressed this point, we see no indication that any court has resolved it differently. *See Henderson v. Carlson*, 812 F.2d 874, 880 (3d Cir.1987); *Mendoza v. Miller*, 779 F.2d 1287, 1295 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). Nor is there any clear distinction in this regard between information about informant reliability and specific evidence provided by an informant. To the extent that either kind of information contains clues to informant identity, the inmate informed upon has no due process right to that information.

To accommodate the prison's informant system, the inmates' interest in full disclosure of the evidence against them and the identity of their accusers must be sacrificed. However, this does not mean, as defendants initially contended below, that this information need never be recorded and that the committee has no obligation to explain the basis for disciplinary action any more fully than it has in its scanty public record. Inmates still have a substantial interest in obtaining judicial review of disciplinary actions, and there is no reason why information that must be kept from the inmates may not be preserved for the courts.

Defendants' position has evolved on appeal, however, in response to *Ponte v. Real*, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed. 2d 553 (1985). Defendants now concede that the committee's reasoning must be explained more fully to the courts, at least with respect to decisions on informant reliability, but contend that a contemporaneous record is unnecessary. In their view, the committee need only furnish explanations when required to do so, for example, by a court seeking to resolve a civil rights suit.

In *Ponte*, the Supreme Court, addressing a committee's refusal to permit an inmate to call witnesses, held that, under *Wolff*, prison officials who refuse to call witnesses whom an inmate requests at a disciplinary hearing must explain their refusal. However, the Court also held that this explanation need not be a part of the administrative record, and need not be recorded contemporaneously with the hearing:

> The question is exactly that posed by the Supreme Judicial Court in its opinion: "whether the Federal due process requirements impose a duty on the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify." [*Real v. Superintendent, Mass. Correctional Institution*] 390 Mass. [399] at 405, 456 N.E.2d [1111] at 1115. We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the

hearing, or they may choose to explain it "later."

471 U.S. at 497, 105 S.Ct. at 2196. Defendants posit that the explanations sought here are indistinguishable from those sought in *Ponte,* and further presume, apparently, that the post hoc explanation may be supplied in any manner convenient to prison officials, as for example by an unsworn report prepared for the court based on the unaided recollection of one of the disciplinary committee members.

### C.

■■■ We must decide, then, not whether the committee must prepare a written record reflecting its "independent assessment" of an informant's reliability—defendants concede that much must be done —but whether the record reflecting the committee's determination about that matter must be made contemporaneous with the disciplinary hearing or at some later time.

Although, remarkably, there appear to be no decisions by this court on the issue before us, the Seventh Circuit has decided a series of cases concerned with the scope of due process protection that must be afforded a prisoner in disciplinary hearings involving the use of confidential informants: *See, e.g., McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1982) (*McCollum I*); *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *McCollum v. Williford,* 793 F.2d 903 (7th Cir.1986) (*McCollum II*); *Sanchez v. Miller,* 792 F.2d 694 (7th Cir.1986); *Wagner v. Williford,* 804 F.2d 1012 (7th Cir.1986).

The defendants' argument is that the Supreme Court's decision in *Ponte* is authority for the position that there is no due process requirement that a disciplinary committee prepare a contemporaneous record of its determination concerning the reliability of a confidential informant's in-

formation, but may, instead, make and submit to a reviewing court a record on the matter if and when the disciplined inmate files a federal court action. Defendants recognize that the *Ponte* Court did not address the subject of the need for a reviewable record of a disciplinary committee's determination of the reliability of informant information but was concerned instead with the requirements of due process relating to a disciplinary committee's refusal to permit an inmate to call witnesses in his behalf. Defendants argue, however, that the rationale of *Ponte* should be extended to the facts of the case before us and that the Seventh Circuit's decision in *Mendoza* supports that view.

In *Mendoza* the court held:

[T]hat the Due Process Clause does not require prison disciplinary committees to state specifically on a public record the factual basis for its finding as to the reliability of a confidential informant. Accordingly, we reaffirm the procedure followed in *Dawson;* prison officials may satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review.

779 F.2d at 1295.

The confidential report, which was reviewed by the court and which documented the reliability of the informants, had been submitted to the committee which revoked Mendoza's good time, 779 F.2d 1296. This latter fact is important since we are reviewing whether the disciplinary committee had a basis for finding the informants reliable or their information reliable. The committee in the instant case stated that its reasons for its findings were the officer's report and the confidential information, which we take to be the statements of the informants. The report and these statements are contemporaneous; they were viewed by the committee. If they document the reliability of the informants or of the informants' information, the factual basis for the committee's findings can be reviewed.

The *Mendoza* court did not explicitly hold that due process, in cases involving the use of confidential informants, does not require a contemporaneous record of the committee's assessment of an informant's reliability. Mendoza claimed that he must be supplied a public record of the committee's "specific findings as to the reliability of each informant relied on and the factual basis for the finding [must] be stated on the record." The *Mendoza* court responded that such information need not be supplied in a "public" record, and that "prison officials may satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for an *in-camera* review." 779 F.2d at 1295. The court did not say that the confidential report need not be prepared until a lawsuit is filed, conceivably well after the disciplinary committee hearing. As we noted, the report was submitted to the committee. Indeed, a substantially distinguishing feature of *Mendoza* is that the public record findings of the disciplinary committee included the statement that "confidential sources are known by this chairman to be reliable." In all events, the language of the dispositive holding in *Mendoza* speaks of "satisfy[ing] the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review." The "procedural due process" to which the inmate is entitled, including documenting the reliability of the informant in a confidential report, is process to which the inmate is due in connection with the disciplinary hearing itself and not merely process to be provided after the fact by creating the necessary confidential documentation if, as, and when the inmate challenges a loss of liberty in a later federal judicial proceeding.

Post–*Mendoza* decisions in the Seventh Circuit suggest recognition that due process requires that a contemporaneous record be made of the disciplinary committee's determination of informant reliability.

*McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982) (*McCollum I*), is a decision which antedates *Mendoza* and *Ponte*, but was reexamined by the court after remand and reappeal. In *McCollum I*, a decision relied upon by both the majority and the dissent in *Mendoza*, Judge Posner weighed the costs and the benefits of providing various contemporaneous procedural assurances of the reliability of informant testimony. The court decided it was impossible to determine the costs on the "scanty record" then before the court, but that the benefits in increased due process were quite significant because of the "significant risk of error" reliance upon informants entails:

The report of the investigator is persuasive in its detail, but an investigative report, however vivid and apparently true, is not, as the magistrate thought, self-validating. The investigator was not called as a witness, although his identity is not confidential. He was not asked to swear to the truth of the report. None of the informants testified before, or was interviewed by, the Institution Discipline Committee. The Committee would not even vouch for the credibility of the investigator or his informants. All it said was that information received from confidential sources had proved reliable in the past—not necessarily information from these sources, compiled by this investigator. Not all prison inmates who inform on other inmates are telling the truth; some are enacting their own schemes of revenge; and though it is unlikely that all or most of the informants interviewed for the investigative report were lying, if some were that could have affected the severity of the sanction that the Committee meted out....

*Id.* at 1048–49. After remand, the Seventh Circuit approved the constitutionality of new procedures adopted by the prison, calling for, among other things, particularly stated findings on the reliability of informants to be reported in a contemporaneous written statement. *McCollum v. Williford*, 793 F.2d 903 (7th Cir.1986) (*McCollum II*).

In a more recent case, *Wagner v. Williford*, 804 F.2d 1012 (7th Cir.1986), the same court employed *Mendoza*'s list of "four

possible indications that confidential information introduced in an IDC hearing is reliable," but upheld a reliability determination only after noting that the court below had been able to review the very same "confidential material on which the IDC relied" in making the determination. *Id.* at 1016. Taken together with the court's statement that "the *post hoc* nature of [an amendment to the committee's contemporaneous reliability findings] raises questions of fairness," *id., Wagner* appears to belie any implication in *Mendoza* that *post hoc* production of the record underlying decisions on informant reliability meets the requirements of due process.

In *Henderson v. Carlson*, 812 F.2d 874 (3d Cir.1987), the Third Circuit seems to read both *Ponte* and *Mendoza* as permitting a post hoc record only in the sense that the committee's factual basis for relying upon particular informants in a given case need not be disclosed in the public hearing record that is made available to the inmate, but *not* in the sense that no contemporaneous record of factual information need be made. *Henderson* held that:

[A] prison disciplinary committee need not reveal at a disciplinary hearing evidence bearing on the reliability of confidential informants if prison officials believe that such evidence is capable of revealing the identity of the informants and if the evidence is made available to the court for in camera review....

812 F.2d at 880. In support of this holding, the court noted that:

[I]n *Ponte v. Real,* the Court held that prison officials are not obligated to explain at the hearing why witnesses requested by the inmate are not allowed to testify, and even the dissenting Justices agreed that "sealed contemporaneous explanations followed by in camera review ... would satisfy [due process] concerns fully." 471 U.S. at 513, 105 S.Ct. at 2205 (Marshall, J., dissenting). Together, these cases confirm that our holding adequately accommodates inmates' procedural due process rights.[5]

Id. In this context, defendants' reliance upon *Mendoza* and *Ponte* is misplaced.

Another reason we do not consider persuasive defendants' reading of *Ponte* is the significant difference in what was missing from the record in the two cases. The issue in *Ponte* was whether the failure to explain at the time of the hearing why the committee dispensed with the testimony of certain witnesses rendered that hearing constitutionally inadequate. What was missing from the record was a rationale for the absence of evidence that might have challenged or supplemented the facts relied upon by the committee. Even in the absence of such defense testimony, however, there must be "some evidence" in the record in *support* of a charge before discipline may be imposed. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). When the basis for informant reliability findings and all details of the informant testimony are absent from the record, the factual basis for imposing discipline is missing, and perfectly arbitrary disciplinary action becomes a real possibility.

The need for confidentiality, to preserve informant anonymity, is the only rationale put forward to explain the extreme sparsity of the disciplinary records before us. This rationale is simply irrelevant to the only issue as to which serious controversy still exists in this case—whether the detailed evidence and the basis and reasons for the committee's determinations of informant reliability must be preserved in a contemporaneous, nonpublic record. Although permitting the committee to later explain its reasoning for determining informant reliability may not threaten the integrity of the process, it does not follow that officials should be permitted to later furnish the factual information upon which it is said their reasoning was based. Unless this evidence in support of disciplinary action is recorded contemporaneously, prisoners' already minimal due process rights will be curtailed significantly in the absence of

---

5. Our decision is also supported by *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697

(1986), in which the Seventh Circuit reached a holding virtually identical to our holding today.

any institutional exigency requiring such curtailment.

Requiring a contemporaneous record of evidence helps to assure that a disciplinary committee will act fairly and actually make an independent assessment of the evidence and of informant reliability and permits judicial review of that assessment. It eliminates the possibility that officials might later search around for evidence which would have warranted a committee in deeming an informant reliable. In light of the risk of error entailed by informant testimony, *see McCollum I*, 695 F.2d at 1048; the need for "some evidence" in the record in *support* of a disciplinary action, *see Superintendent v. Hill*, 472 U.S. at 455, 105 S.Ct. at 2774, the insignificant added costs of requiring evidence to be recorded contemporaneously; the potential for error and inefficiency if prison officials prepare a recitation of evidence only after their actions are challenged in court; and the views expressed in *Henderson* and *Wagner*, we are persuaded that due process requires this contemporaneous recording of the evidence. Although due process does not require that the committee's findings and reasoning also be recorded contemporaneously, this is the better practice.

Only the administrative convenience of prison administrators may be compromised by a requirement that evidence be recorded. The interests of prison security, to which we defer under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), provide no basis for dispensing with *confidential* contemporaneous findings.

■ We hold that prison disciplinary committees are obligated to assess the reliability of inmate informants upon whose testimony they rely to deprive inmates of good time credits. A contemporaneous written record must be made of the evidence relied upon. If, because of efforts to protect informant anonymity, the evidence in support of disciplinary action supplied to the inmate fails to meet the constitutional minimum of "some evidence," more detailed evidence, sufficient to meet constitutional standards, must be placed in a non-public record.

## IV.

We note, however, that inmate Stevens, whose administrative record comes very close to containing no information at all to support the charge, did not lose good time as a result of those proceedings. Therefore, his due process rights should not have been assessed under the standards set forth in *Wolff*, but under *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). We therefore reverse the judgment in Stevens' favor and remand for a determination of whether the procedures followed in this case were unconstitutional under *Hewitt*.

## V.

Summary judgment and injunctive relief in the cases of Hensley, Payne, and Keithly are AFFIRMED. Summary judgment in favor of Stevens is REVERSED, and the action is remanded to the district court to permit the defendants to submit to the district court the contemporaneous officers' report or reports, and the confidential information submitted to the committee. We REVERSE the district court's holding that defendants are not entitled to qualified immunity.