945 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald JOHNSON, Plaintiff-Appellant,
v.
Lt. G. Bently, C. DOYLE, Kathy McDaniel, Al C. Parke, Norman
C. Clampitt, Jr., Defendants-Appellees.
 No. 90-5019.
 United States Court of Appeals, Sixth Circuit.
 Sept. 27, 1991.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff-appellant Ronald Johnson is an inmate at the Kentucky State Reformatory in La Grange, Kentucky. The defendant-appellees are four prison officials and one college professor, Norman C. Clampitt, Jr. (Clampitt, Jr.). Johnson appealed from the district court's grant of summary judgment to the appellees dismissing his 42 U.S.C. section 1983 action. In his complaint, Johnson alleged that the prison officials violated his rights to due process and equal protection of the law by determining that he possessed "dangerous contraband" in violation of a prison administrative rule. Johnson requested damages and injunctive relief.
 
 
 2
 After the prison responded to Johnson's complaint, the district judge referred the case to a magistrate pursuant to 28 U.S.C. section 636(b)(1)(A) & (B). The magistrate sua sponte recommended that summary judgment be granted to the appellees. Johnson objected to the magistrate's report and recommendation. The district court overruled Johnson's objections and granted summary judgment to the appellees on November 29, 1989.
 
 
 3
 On November 14, 1988, an official at the Kentucky State Reformatory conducted a shake-down search of Johnson's cell. The official discovered a two-page handwritten memo upon which was recorded a formula to produce an unidentified substance from the ingredients found in "Vic's inhalers." The official confiscated the notations.
 
 
 4
 Lieutenant Gayle Clampitt at the reformatory mailed the formula to Norman Clampitt, Jr., a professor at Tarkio College, Tarkio, Missouri. Clampitt, Jr. responded on the letterhead of the college on December 4, 1988. The letter was addressed "To whom it may concern," and carried the signature "Norman Clampitt, Jr., Associate Professor of Chemistry." Clampitt, Jr. explained that the formula disclosed a procedure for producing a substance known as l-desoxyepherine, also known as methamphetamine hydrochloride, sold on the streets as "speed" and "white crosses." Clampitt, Jr. advised that he followed the procedure outlined in the formula by using the ingredients from six "Vic's inhalers" as directed therein. He returned a sample of the substance he had produced "in the event such a sample is needed for analysis for a positive identification which my laboratory does not have the capacity to produce."
 
 
 5
 Subsequent to receiving Clampitt, Jr.'s response and samples of the results of his experiment, the prison's adjustment committee conducted a hearing and concluded, solely upon Clampitt, Jr.'s information, that the formula was "dangerous contraband" in violation of prison rule Category VI, Item 4. Prior to the hearing, Johnson was given a copy of the incident report, which described both the search and the laboratory results. During the hearing, Johnson's legal aide presented evidence that none of the materials specified in the formula were available to inmates, and that the formula itself was available in the prison library's copy of "High Times," a publication of general circulation. The prison denied Johnson's request that Professor Norman C. Clampitt, Jr. testify because the professor was not an employee of the state and could not be compelled to appear.
 
 
 6
 Johnson received thirty days of administrative segregation for violating the rule. The adjustment committee issued a detailed written statement of the hearing that included the officer's report of the incident, the testimony presented at the hearing, the letter identifying the substance, and its justification for imposing the punishment. Johnson appealed the decision to Warden Al C. Parke, who denied the appeal.
 
 
 7
 Johnson brought this action against the appellees in their official capacities. State officials sued in their official capacities are immune from liability for damages under the Eleventh Amendment. Will v. Michigan Dep't of State Police, 109 S.Ct. 2304 (1989). Although pro se complaints are held to less stringent standards than pleadings drafted by attorneys, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972), the Eleventh Amendment bar is jurisdictional and can not be waived. Since Johnson did not proceed against the appellees in their personal capacity, this court has no jurisdiction to consider his damages claim. Wells v. Brown, 891 F.2d 591, 592 (6th Cir.1989). Moreover, because Professor Norman C. Clampitt, Jr. was not, at the time here in controversy, an employee of Kentucky, his actions could not have been taken under color of state law. Consequently, this court is without jurisdiction to consider Johnson's 1983 cause of action against him. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729 (1978).
 
 
 8
 An essential element of due process in a prison disciplinary action affecting a liberty interest of a prisoner is the presence of some reliable evidence to support the charges. Higgs v. Bland, 888 F.2d 443 (6th Cir.1989); Hensley v. Wilson, 850 F.2d 269, 276-78 (6th Cir.1988). However, a disciplinary action taken by a prison authority need only be supported by a modicum of such reliable evidence. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774 (1985).
 
 
 9
 The record before this court is devoid of even a modicum of reliable evidence to support the adjustment committee's determination that Johnson possessed dangerous contraband. The only evidence addressing the substance that the formula produced was the conclusion letter written by Professor Norman C. Clampitt, Jr. The letter related the results of his purported experiment, however, Clampitt, Jr. never validated his procedures in conducting his experiment or its results. As Clampitt, Jr. recognized in his letter, he lacked the necessary equipment to conclusively identify the substance which his experiment produced. Moreover, Clampitt, Jr.'s professional qualifications to perform the tests were not before the adjustment committee.
 
 
 10
 The prison's refusal to summon Clampitt, Jr. as a witness did not violate Johnson's due process rights, Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2980 (1974), but it did preclude the prison authorities from proving a violation of prison rule Category VI, Item 4 because the evidence that supported the decision of the adjustment committee was unreliable without first having qualified Professor Norman C. Clampitt, Jr. as capable of conducting the experiment and validating his procedures and results. In light of the inconclusiveness of the evidence, which failed to identify the substance that was the product of Clampitt, Jr.'s purported experiment coupled with a failure to qualify Clampitt, Jr. as an individual with sufficient background to conduct the purported chemical experiment, the adjustment committee did not have even a modicum of reliable evidence upon which to determine that Johnson violated the prison rules. Thus, it violated Johnson's due process rights.
 
 
 11
 The prison otherwise afforded Johnson all the process he was due by providing him a copy of the charges filed against him prior to the hearing and by preparing a written report of the hearing. Wolff v. McDonnell, 418 U.S. at 564-65, 94 S.Ct. at 2979 (1974). Similarly, there was no error in the magistrate's sua sponte recommendation of summary judgment, since Johnson was given notice and the opportunity to object to the recommendation. Harrington v. Vandalia-Butler Board of Education, 649 F.2d 434, 436 (6th Cir.1981); Fox v. Strickland, 837 F.2d 507, 509 (D.C.Cir.1988).
 
 
 12
 Because the adjustment committee's determination that Johnson possessed "dangerous contraband" violated the due process clause of the Fourteenth Amendment, the grant of summary judgment to the appellees is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 13
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 14
 I agree that the defendant prison officials are immune from liability for damages and that plaintiff Johnson has no justiciable claim against Professor Clampitt. I disagree, however, with the conclusion that the prison's adjustment committee violated the Due Process Clause of the Fourteenth Amendment when it concluded that Mr. Johnson's possession of the formula for producing methamphetamine hydrochloride constituted a violation of the prison rule against possession of contraband.
 
 
 15
 Professor Clampitt certified that his laboratory followed the directions set forth in the formula and obtained what he took to be methamphetamine hydrochloride of no more than approximately 50 percent purity. (Professor Clampitt said that his laboratory did not have the capacity to make a positive identification, but the report makes it clear that whatever the chemical composition of the impurities may have been, Professor Clampitt believed he had obtained as much as 256 mg. of methamphetamine hydrochloride--a drug that, as he said, "is sold on the street as 'speed,' 'white crosses,' etc.") The professor said that a recrystalization procedure would be required to obtain a product of greater purity, but that such a procedure would not be necessary for use of the drug.
 
 
 16
 It is true that Professor Clampitt's report constitutes hearsay, but the Constitution does not proscribe the use of hearsay in administrative proceedings of the sort with which we are concerned here. It is also true that we know nothing of Professor Clampitt's professional qualifications, beyond the fact that he is an associate professor of chemistry at Tarkio College, a Missouri institution founded more than 100 years ago. The formula in question was presumably intended for use by laymen, however, not by professional chemists, and if the magazine "High Times" is to be credited, a layman could use the formula to make "speed" from non-prescription inhalers that are available for sale in any drug store. It would certainly not be surprising to find such an inhaler in the pocket or purse of a visitor to the prison.
 
 
 17
 Although the "High Times" article provides independent verification that the formula found in Mr. Johnson's cell was a formula for producing "speed," it gives me pause, I confess, that the magazine was available, for some reason, in the prison library. On the theory that the prison can more readily control the use of library materials than of materials hidden in a prisoner's cell, however, I would conclude, as did the district court, that the availability of the formula in the library did not mean that prisoners were entitled to keep copies in their cells.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Court Judge, Eastern District of Michigan, sitting by designation